IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| CORE LABORATORIES LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-1157-M |
| | ) |
| SPECTRUM TRACER SERVICES, | ) |
| L.L.C., STEVE FAUROT, and | ) |
| KELLY BRYSON, | ) |
| | ) |
| Defendants. | ) |

# ORDER

Before the Court is Defendant Spectrum Tracer Services, LLC's ("STS") Motion to Quash and Motion for Protective Order, filed June 26, 2015. On July 17, 2015, plaintiff Core Laboratories LP ("Core") responded; on July 24, 2015, STS replied, and on September 1, 2015, Core filed a surreply. Also, before the Court is Core's Motion to Compel Production of Investor Information, filed August 10, 2015. On August 28, 2015, STS responded. Based on the parties' submissions, the Court makes its determination.

I.  Background

Core brings this action against defendants for misappropriation of trade secrets, violation of the Texas Theft Liability Act CPRC § 134.001, et al., unfair competition, copyright infringement, and patent infringement.[1] Core alleges that it has developed products specifically for the use of radioactive tracer services such as a "stinger", "overpack", "pumps", "stands", and software applications which include customer lists, pricing data, computer code, proprietary formulas, and additional content, all of which are confidential and constitute trade secrets. *See*

---

[1] Core also alleges a breach of contract claim against defendant Kelly Bryson.

1

Plf.'s Fourth Am. Compl. ¶¶ 15-16. Core specifically alleges that defendants have wrongfully appropriated this property for their own use.

Core issued twenty-two (22) subpoena duces tecum to various nonparties, including corporate and individual investors and vendors of STS. The subpoenas to STS investors seek information, including all documents and communications provided to the investors related to STS, this lawsuit, and regarding: (1) the investors' investment in or contributions to STS; (2) distributions or consideration the investor received from STS, including how those distributions or consideration were distributed among the owners; (3) documents including prospectuses, advertising material, business plans, strategic plans, budgets, long-range plans, forecasts, projections, financial plans, management information, management reports, board meetings, presentations or any type of written solicitation; and (4) documents identifying an investor's owners, including each owner's investment level and ownership package, including communications between the investor and their owners regarding STS and between the investor and other STS investors regarding STS. *See* Mot. to Quash and for Protective Order Exhibits A and B.

The subpoenas to STS vendors seek (1) all documents that refer to, relate to, or evidence any: business relationship that the vendor currently has, or has ever had, with defendants, Glenn Brown, or Rising Tide Investments, LLC[2]; services the vendor provided to defendants or Glenn Brown; the sale of any products, components, parts, or other goods by the vendor to defendants or Glenn Brown; communications between the vendor and another person from 2008 to the present where the subject of the communication related to STS or to Tulsa Precision Machine

---

[2] According to STS's motion, Glenn Brown is STS's Chief Financial Officer and Rising Tide Investments, LLC is a corporate investor of STS.

LLC[3]; (2) all documents given to the vendor by any person for the purpose of allowing the vendor to provide goods and/or services to defendants or Glenn Brown; (3) all documents created or generated by the vendor in conjunction with providing goods and/or services to defendants; and (4) all communications from 2008 to the present between the vendor and defendants, Glenn Brown, and Rising Tide Investments, LLC. *See* Mot. to Quash and for Protective Order Exhibit B.

STS now moves the Court to enter an order quashing these subpoenas and for a protective order. Specifically, STS asserts it has standing to move to quash these subpoenas directed at nonparties because STS has a personal privilege in the production sought, and further, pursuant to Federal Rules of Civil Procedure 26 and 45, the subpoenas subject STS and the subpoena nonparties to undue burden, are intended for purposes of harassment or unfair competition, and exceed the scope of permissible discovery in this action. Core moves the Court to enter an order compelling STS to produce information regarding the amount of money distributed to each of its investors.

II.  Discussion

"A motion to quash a subpoena may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena." *Stewart v. Mitchell Transp.*, No. 0 CIV.A. 01-2546-JWL, 2002 WL 1558210, at *1 (D. Kan. July 11, 2002) (internal citation and quotations omitted). Further, Federal Rule of Civil Procedure 26(b)(1) provides, in pertinent part:

---

[3] Tulsa Precision Machine, LLC was a previous vendor of STS but was dissolved as of September 26, 2013. *See* Core's Resp. Exhibit 1 Articles of Dissolution.

3

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Lastly, protective orders are governed by Federal Rule of Civil Procedure 26(c). That rule provides, in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery; . . . .

Fed. R. Civ. P. 26(c)(1)(A).

The party seeking a protective order must show "good cause" for his request. *Id.*; *Am. Benefit Life Ins. Co. v. Ille*, 87 F.R.D. 540, 543 (W.D. Okla. 1978). "'Good cause' within the meaning of Rule 26(c) contemplates a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Am. Benefit*, 87 F.R.D. at 543 (quoting *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)).

A. <u>Standing to Move to Quash</u>

STS contends that the information sought in Core's subpoenas to STS's investors and vendors "includes STS's confidential and proprietary information and trade secrets regarding its

business operations, finances, strategic plans, forecasts, projections, privileged communications, litigation related materials and other sensitive and confidential information and its public release could harm STS's ability to engage in any business activities." Mot. to Quash and for Protective Order at 7. Core contends that STS has failed to meet its burden in showing it has an interest in the documents requested in the subpoenas to its investors and vendors and, therefore, does not have standing to challenge the subpoenas. Having carefully reviewed the parties' submissions, the Court finds that STS does have standing to move to have Core's subpoenas to STS's investors and vendors quashed. Specifically, the Court finds that the information Core seeks in its subpoenas to STS's investors and vendors is information relating to this lawsuit and to STS's past, present, and future business plans and activities, information to which STS has a personal right and privilege.

B.   Scope of Discovery

1.   Subpoenas to corporate and individual investors

STS contends that the information Core seeks through its subpoenas to STS's investors (and from STS through its motion to compel) is not relevant to the subject matter involved in this action or to any party's claims or defenses and is far beyond the scope of any permissible discovery. Specifically, STS contends the breakdown of distributions made to each investor regarding amounts and percentages paid and subsequently distributed to their equity owners (in the case of corporate investors) has no bearing on any issue in this case. Further, STS contends Core's request for information regarding its prospectuses, advertising material, business plans, strategic plans, budgets, long-range plans, forecasts, projections, and financial plans is not limited in scope and seeks information that is confidential and proprietary to STS, and Core has no legitimate purpose for obtaining this information.

5

Core asserts that the information requested in the investors' subpoenas is relevant to determine defendants' intentions regarding Core's trade secrets, the source of information relating to the equipment, and the speed with which defendants were able to develop a competing system and the profit projections. Core specifically contends that the breakdown of proceed amounts distributed to each investors is important because "(1) it is a targeted metric that will show how the company doles out its ill-gotten profits; (2) it may shed light on the credibility of likely witnesses, such as Mr. Brown and Mr. Faurot; and (3) it may illuminate the business operations of the close-knit group of friends and partners who invested in Spectrum and may have participated in the alleged wrongdoing . . . ." Core's Memorandum in Support of its Motion to Compel Production of Investor Information at 2. Further, Core contends that as a potential judgment creditor it is entitled to know what STS has done with its alleged ill-gotten profits.

Having carefully reviewed the parties' submissions, the Court finds that Core's subpoenas to STS's investors (both corporate and individual) extend beyond the scope of Rule 26(b)(1) and should be quashed, and, further, STS is not required to produce information regarding how its proceeds were specifically distributed among its investors. The Court finds that Core has not shown how STS's distribution of its proceeds to its investors is relevant to the subject matter involved in the action. STS contends it has already turned over information to Core regarding profits it has made using instrumentalities Core alleges STS misappropriated. The Court finds any further information regarding how these profits were distributed to nonparties to this suit would not be relevant to show whether STS misappropriated Core's trade secrets. The Court also finds that if a potential STS witness is an investor, that fact will be sufficient to show the witness has a vested interest in STS and establish bias. Further, the Court finds that since STS's investors are nonparties in this case, Core has failed to show how

information regarding the business relationships between STS and its investors would lead to the discovery of admissible evidence in this case. As a result, the Court finds that STS has shown good cause for a protective order prohibiting Core from issuing subpoenas to STS's investors. Lastly, the Court finds Core's contention that as a potential judgment creditor it is entitled to STS's investor distribution information is premature.

2. <u>Subpoena of vendors</u>

STS contends that Core's subpoenas to its vendors Rise Manufacturing, LLC ("Rise") and JCIrs Industries, LLC exceed the scope of discovery, pursuant to Rule 26(b)(1), and are overbroad. Specifically, STS contends that the information sought regarding the vendor relationships and costs have no bearing on this lawsuit. Core contends that "the vendors machined and produced various components of the technologies at issue in this lawsuit, and the details of relationships between these vendors and [STS] (and the [STS] – affiliated individuals and entities) may reveal the details of [STS's] use of Core's trade secrets and technologies." Core's Resp. at 13.

Having carefully reviewed the parties' submissions, the Court finds that the only documentation or communication sought through the vendor subpoenas that is relevant to the issues in this case, or is reasonably calculated to lead to the discovery of admissible evidence, are the documents that refer to, relate to, or evidence any business relationship with; services provided to; sale of any products, components, parts, or other goods by the vendor to; or documents created or generated by the vendor in conjunction with providing goods and/or services to defendants. Further, the Court finds that since Tulsa Precision Machine, LLC, a previous vendor of STS, sold all of its assets to Rise, any information that Rise has regarding Tulsa Precision Machine, LLC and the above sought information pertaining to defendants is also

7

relevant. Finally, the Court finds that any documentation or communication between Rise or JCIrs Industries, LLC and nonparties in this suit exceed the scope of discovery in this case.

III.     Conclusion

Accordingly, the Court GRANTS IN PART and DENIES IN PART STS's Motion to Quash and Motion for Protective Order [docket no. 231] as follows: (1) the Court GRANTS STS's Motion to Quash and Motion for Protective Order as to Core's subpoenas to STS's corporate and individual investors, QUASHES Core's subpoenas to STS's corporate and individual investors, and PROHIBITS Core from requesting information from STS's corporate and individual investors; and (2) the Court DENIES STS's Motion to Quash and Motion for Protective Order as to Core's subpoenas to STS's vendors and LIMITS the scope of the vendor subpoenas to the information stated above. Further, the Court DENIES Core's Motion to Compel Production of Investor Information [docket no. 248].

**IT IS SO ORDERED this 9th day of September, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE