**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CORE LABORATORIES LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-11-1157-M |
| | ) | |
| SPECTRUM TRACER SERVICES, L.L.C., | ) | |
| STEVE FAUROT, and KELLY BRYSON, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Spectrum Tracer Services, LLC's ("STS") Motion for Partial Summary Judgment and Supporting Brief, filed September 21, 2015. On October 5, 2015, plaintiff, Core Laboratories LP ("Core"), responded, and on October 8, 2015, STS replied. Based on the parties' submissions, the Court makes its determination.

I.  Introduction[1]

On June 10, 2015, Core filed its Fourth Amended Complaint alleging that STS and defendants Steve Faurot ("Faurot")[2] and Kelly Bryson ("Bryson")[3] (1) misappropriated Core's trade secrets; (2) violated the Texas Theft Liability Act; (3) unfairly competed against Core; (4) infringed on Core's copyrighted work; and (5) infringed on Core's patents Nos. 6,659,175 and

---

[1] The facts set forth are either undisputed or viewed in the light most favorable to plaintiff, the non-moving party.

[2] Faurot is a former employee of Core and currently the president of STS.

[3] Bryson is a former employee of Core who resigned in 2010 and began working for STS as an operations manager.

1

7,032,662.[4] STS seeks partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, as to Core's claims of copyright infringement, misappropriation of trade secrets, and violation of the Texas Theft Liability Act.

Core[5] alleges copyright infringement against STS[6] as to its 2005 Operating & Emergency Procedures Manual ("2005 Manual"). An operating and emergency procedure manual ("O&E Manual") is a regulatory requirement to perform radioactive tracing services. The form and content of an O&E Manual are heavily regulated and mandated; however, companies may stylize its manual to suit its particular business and procedures. Core's 2005 Manual was published on December 13, 2005, and on February 7, 2011, Core registered a copyright of its manual.

In 1985, Core's predecessor, ProTechnics, had a new O&E Manual prepared by a company called W.H. Henken. Larry Stephenson ("Stephenson") drafted ProTechnics' O&E Manual on behalf of W.H. Henken. In 1996, Stephenson began working for Core, and in 1997, Core acquired ProTechnics. Stephenson continued to be the primary draftsperson for all revisions to the ProTechnics' O&E Manual at Core. Core's 2005 O&E Manual was a result of the continued revisions to the ProTechnics' O&E Manuel by Stephenson.[7]

---

[4] Core also alleges that Bryson breached his contract and further seeks an injunction against defendants for its misappropriation of trade secrets, copyright infringement, and patent infringement claims. All claims in this litigation relating to Core's patents are stayed until after the United States Patent and Trademark Office concludes its reexamination of Core's patents.

[5] Core holds itself out to be the industry leader in radioactive tracing services and has developed several products used in the employment of these services.

[6] STS is an Oklahoma limited liability company formed in 2010 and competes with Core in the tracing industry.

[7] Core alleges that sections II, III, paragraph 7.0 of section IV, and sections VI through XIII of Core's 2005 Manual are all the original work of Core. *See* STS's Mot. for Summ. J. Exhibit G, Core Laboratories LP's Responses to Spectrum Tracer Services' First Set of Interrogatories, Interrogatory No. 8. The parties dispute whether the remaining portions of

When STS was formed, STS employee Ken Snow ("Snow") was tasked with creating an O&E Manual for STS. Snow testified, in his deposition, that he requested several competitors' O&E Manual through the Freedom of Information Act, including Core's 2005 Manual. Snow admitted that he copied a majority of Core's 2005 Manual in creating STS's O&E Manual because Core's 2005 Manual met the criteria for the regulatory requirements and contained the best information. *See* Core's Resp. Exhibit 5, Deposition of Ken Snow p. 20 ln. 7-20. Core concedes that its 2005 Manual did not bear a copyright symbol; however, Core alleges its 2005 Manual contains other information identifying Core as the author of the manual. Further, it is undisputed that Core did not copyright its 2005 Manual until after it discovered that STS had copied it. *See* Mot. for Summ. J. at 4 ¶ 15 (citing Exhibit F, Deposition of Tom Hampton p. 189 ln. 17-22.)

Core also alleges that STS misappropriated its Software Applications, which Core considers trade secrets.[8] Specifically, Core alleges STS misappropriated the following documents: Copy of Copy of Field Paperworks2.xls and Copy of Field Paperwork.xls; ("Field Paperwork Files"); PPWOKC_0610.xls ("PPWOKC File"); and the Field Audit File (collectively "Core's Spreadsheets").[9] Bryson was in charge of creating the forms used in the

---

Core's 2005 Manual were derived from an O&E Manual from Radiation Engineering Consultants, a company that Stephenson worked for prior to W.H. Henken.

[8] Core alleges its Software Applications were used in connection with providing Core's tracing services and are comprised of "customer lists, pricing data, computer code, proprietary formulas, and additional content." Fourth Am. Compl. ¶ 16.

[9] The Field Paperwork Files were designed to permit Core's field personnel to enter data and generate forms at Core's jobs sites. It is also distributed to customers and is required by the Department of Transportation. *See* Core's Resp. at 6 ¶ 31. The PPWOKC File is designed to carry out numerous computations and functions used for month-end reporting. *Id.* at 7 ¶ 32. The Field Audit File contains forms used to track field technicians compliance with various safety

field by STS's field operators. *See* STS's Mot. for Summ. J. at 8 ¶ 36 (citing Exhibit Q, Glenn Patrick Brown's Deposition 114 – 115). It is disputed as to when STS learned that Bryson had taken several of Core's documents and altered them to create several of STS's forms. Further, Chad Daniken ("Daniken"), a former Core employee, used Core's Field Audit Report while employed at STS to perform field audits. STS contends that it only used the hard-copy versions of Core's Spreadsheets and not the digital. While Core disputes STS's contention, it also asserts that the hard-copies of the Spreadsheets used by STS were also trade secrets and misappropriated by STS.

II.  Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

---

regulations. *See* STS's Mot. for Summ. J. at 8 ¶ 33 (citing Exhibit D, Michael Flecker Deposition, p. 198 and 199).

of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III. Discussion

    A. Copyright Infringement

In order for Core to prove copyright infringement, it must show (1) it owns a valid copyright, and (2) STS copied constituent elements of Core's 2005 Manual that are original to Core.[10] *See Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1262 (10th Cir. 2008).[11] STS contends that Core is not entitled to copyright protection as to sections of Core's 2005 Manual that are not Core's original work.[12] Specifically, STS contends that based on Core's response to STS's interrogatory that only Section II, Section III, Paragraph 7.0 of Section IV, and Sections VI through XIII were original works of Core, the remaining sections of Core's 2005 Manual are not entitled to copyright protection because Core cannot show ownership by proving originality. Core contends that (1) the fact that STS acknowledges that some parts of Core's 2005 Manual are Core's original work and that STS in fact copied portions of Core's

---

[10] The Court will only be addressing the first element of this analysis. The fact that STS copied Core's 2005 Manual is undisputed and supported by the record. *See* Core's Resp. Exhibit 5, Deposition of Ken Snow p. 20 ln. 7 & 8 ("Q. Did you copy Core's manual exactly? A. The majority of it, yes.").

[11] Since Core's 2005 Manual was not registered before or within five years of its publication, Core is unable to provide prima facie evidence that its 2005 Manual receives copyright protection. *See* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. . . .").

[12] STS also contends that Core cannot pursue any claim for copyright infringement as to the use of Core's Spreadsheets. In its response, Core asserts that it is only bringing a copyright infringement claim as to its 2005 Manual (and the forms within the Manual). Therefore, STS's assertions that Core is not entitled to copyright protection as to its Spreadsheets are moot and will not be addressed by the Court.

2005 Manual defeats STS's motion for summary judgment; and (2) that it is a genuine issue of material fact as to whether Core has a valid copyright of each section of its 2005 Manual. As to Core's first contention, Core specifically asserts that if it is determined that STS actually copied sections of Core's 2005 Manual entitled to copyright protection, Core would prevail on a copyright infringement claim. Further, as to its second contention, Core asserts that its 2005 Manual was drafted entirely by Stephenson while he was an employee at Core and that pursuant to 17 U.S.C. § 201(b), as Stephenson's employer, it was the author of the 2005 Manual and owned the copyright. *See* 14 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, . . . , owns all of the rights comprised in the copyright.").

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to Core and viewing all reasonable inferences in Core's favor, as the Court must when addressing a motion for summary judgment, the Court finds that Core has presented sufficient evidence to create a genuine issue of material fact as to whether its entire 2005 Manual is entitled to copyright protection. While the Court acknowledges STS's contention that some parts of Core's 2005 Manual may not be Core's original work and, therefore, not entitled to copyright protection, the Court finds that STS did in fact copy Core's 2005 Manual which Core alleges contains, if not all, sections of its original work. A reasonable jury could find that those sections that Core alleges is its original work, as well as the entire 2005 Manual, is entitled to copyright protection. Further, Core has presented testimony from Michael Flecker, president of Core's ProTechnics Division, that Stephenson did not use any other O&E Manuals in drafting Core's 2005 Manual (*see* Core's Resp. Exhibit 4, Deposition of Michael Flecker p.280 ln.15-22) and an affidavit from Stephenson declaring that he did not copy any of

his previous work from Radiation Engineering Consultants in drafting the initial O&E Manual for ProTechnics and, further, that after leaving ProTechnics (and being employed at Core), he continued to make revisions and draft entire new sections and subsections, creating Core's 2005 Manual. The Court finds this evidence is sufficient to create a genuine issue of material fact as to whether Core authored its 2005 Manual and, therefore, STS is not entitled to summary judgment as to whether Core's 2005 Manual is entitled to copyright protection.

    B.    <u>Misappropriation of Trade Secrets/Texas Theft Liability Act[13]</u>

STS contends that Core's Spreadsheets[14] are not trade secrets, and, therefore, Core will be unable to prevail on its claim of misappropriation of a trade secret. Further, STS contends that if Core's misappropriation of trade secret claim fails, then so shall its claim that STS is liable under the Texas Theft Liability Act. In order for Core to prevail on its claim that STS misappropriated a trade secret, Core will have to show (1) existence of a trade secret; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) use of the trade secret; and (4) damages. *See Trilogy Software, Inc., v. Callidus Software Inc.*, 143 S.W.3d 452, 463 (Tex. App. 2004).

> To determine whether information constitutes a trade secret, a court considers the following six factors: (1) the extent to which the information is known outside the claimant's business; (2) the extent to which the information is known by employees and others involved in the claimant's business; (3) the extent of the measures

---

[13] STS contends that based on the August 7, 2013 ruling by the United States Court of Appeals for the Federal Circuit [docket no. 146], Texas law governs Core's misappropriation of trade secrets claim. Core does not object to the use of Texas law but does not concede that it applies. The Court determines that Texas law governs Core's claims of misappropriation of trade secrets.

[14] STS makes a distinction in Core's Spreadsheets by referring to either the digital format of the Spreadsheet or hard-copies of the Spreadsheets. In this Order, the Court will not make any distinction and will refer to both the digital and hard-copies of Core's Spreadsheets as Spreadsheets.

7

> taken by the claimant to guard the secrecy of the information; (4) the value of the information to the claimant and to its competitors; (5) the amount of effort or money expended by the claimant in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. The party claiming a trade secret need not satisfy all six factors because trade secrets do not fit neatly into each factor every time.

*Global Water Grp., Inc. v. Atchley*, 244 S.W.3d 924, 928 (Tex. App. 2008) (citing *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003)). "The existence of a trade secret is properly considered a question of fact to be decided by the judge or jury as fact-finder." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004).

STS contends that Core's Spreadsheets were only used as a template to create paper versions of Core's electronic forms. STS also asserts that the forms did not contain any information that was not commonly known throughout the entire industry, that the forms generated by Core's Spreadsheets were widely used among Core's field technicians, and that the forms were accessible to be printed for employees, customers, and regulatory agencies. Further, STS contends that Core has provided no evidence of the dollar amount expended to develop its Spreadsheets and that the Spreadsheets were not overly complicated and could have been duplicated within one week. Core asserts that STS is trying to make a distinction between its digital Spreadsheets (software applications) and the hard-copies of the Spreadsheets. Core contends there is no distinction and both the digital Spreadsheets and the hard-copies of the Spreadsheets were trade secrets and, therefore, there are genuine issues of material fact as to whether its Spreadsheets are trade secrets, precluding summary judgment on this issue.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to Core and viewing all reasonable inferences in Core's favor, as the Court must when addressing a motion for summary judgment, the Court

finds that Core has presented sufficient evidence to create a genuine issue of material fact as to whether its Spreadsheets are trade secrets. STS admits that Core's Spreadsheets were provided to STS by Bryson and Daniken, former employees of Core. *See* Mot. for Summ. J. at 9 ¶¶ 37 & 39. STS provided no evidence demonstrating that Core's Spreadsheets would have been available to use by STS if not provided by Bryson and Daniken. So while the information generated on the forms may have been information known in the industry, Core's Spreadsheets were not readily available to its competitors in the business.

Further, STS acknowledged Core's Spreadsheets contained some complex functions, and that Core took measures to secure its digital Spreadsheets, requiring login access by the field representatives. *See* Mot. for Summ. J. at 23 (citing Exhibit L, Core's Answers to Faurot's First Set of Interrogatories, no. 5). Core also provided deposition testimony from Will Williams, who testified it took maybe six months to build and to convert the paper forms (Core was using in the beginning) to the Field Audit File and about seven or eight days to create the PPWOKC file. *See* Resp. Exhibit 6, Deposition Testimony of Will Williams, p. 52 ln.8-13 and p. 122 ln.21-24. Further, Core has previously provided the Court a digital copy of its Field Paperwork Files which includes copies of Core's pricing policies. *See* Docket No. 132, Plaintiff's Emergency Motion to Sever, to Lift Stay, and for Preliminary Injunction, Exhibit 3 – CD. The Court finds the evidence presented creates a genuine issue of material fact as to whether Core's Spreadsheets are trade secrets, and, therefore, STS's motion for summary judgment should be denied. Further, since the Court finds that STS's motion for summary judgment should be denied as to the issue of misappropriation of trade secrets, the Court finds that STS's motion for summary judgment as to whether STS is liable under the Texas Theft Liability Act should be denied as well.

IV. Conclusion

Accordingly, for the reasons set forth above, the Court DENIES STS's Motion for Partial Summary Judgment and Supporting Brief [docket no. 291].

**IT IS SO ORDERED this 27th day of October, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE