# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CORE LABORATORIES LP, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SPECTRUM TRACER SERVICES, L.L.C., )<br>STEVE FAUROT, and KELLY BRYSON, )<br>)<br>Defendants. ) | Case No. CIV-11-1157-M |

## ORDER

Before the Court is Defendant Steve Faurot's ("Faurot") Motion for Partial Summary Judgment, filed September 21, 2015. On October 5, 2015, plaintiff, Core Laboratories LP ("Core"), responded. A review of the file shows no reply was filed. Based on the parties' submissions, the Court makes its determination.

I.  Introduction[1]

On June 10, 2015, Core[2] filed its Fourth Amended Complaint alleging that Faurot[3] and defendants Spectrum Tracer Services, L.L.C. ("STS")[4] and Kelly Bryson ("Bryson")[5]: (1) misappropriated Core's trade secrets; (2) violated the Texas Theft Liability Act; (3) unfairly

---

[1] The facts set forth are either undisputed or viewed in the light most favorable to plaintiff, the non-moving party.

[2] Core holds itself out to be the industry leader in radioactive tracing services and has developed several products used in the employment of these services.

[3] Faurot is a former employee of Core and currently the president of STS.

[4] STS is an Oklahoma limited liability company formed in 2010 and competes with Core in the tracing industry.

[5] Bryson is a former employee of Core who resigned in 2010 and began working for STS as an operations manager.

competed against Core; (4) infringed on Core's copyrighted work; and (5) infringed on Core's patents Nos. 6,659,175 and 7,032,662.[6] Core specifically alleges that STS and Faurot misappropriated the design of its tracing equipment[7] and three Microsoft Excel spreadsheets ("Spreadsheets")[8] and, further, that Faurot misappropriated Core's customers and pricing policies, all of which Core contends are trade secrets.

Prior to STS being formed, Faurot contacted Bryson regarding starting a tracing company and instructed Bryson to put together a shopping list of items needed in order for STS to start providing tracing services. *See* Resp. Exhibit 13, Deposition of Steve Faurot at 45 ln. 20-21. Bryson informed Faurot that he was in possession of an old set of pumps that were discarded from Core, and Faurot expressed interest in seeing the pumps and later traveled to Oklahoma City to meet with Bryson and to view the pumps. *See* id. at 44 ln. 7-12. Spectrum and Faurot state they did not believe that Core's pumps were trade secret since the peristaltic pump is widely used in the tracer industry by Core's competitors and Faurot personally saw Core's pumps demonstrated at trade shows. *See* Mot. for Summ. J. Exhibit 5, Deposition of Steve Faurot at 46 ln. 15-16. Core acknowledges that other pumps are used in the industry; however, Core contends that its pump is designed differently than other pumps used in the industry and, further, contends

---

[6] Core also alleges that Bryson breached his contract and further seeks an injunction against defendants for its misappropriation of trade secrets, copyright infringement, and patent infringement claims. All claims in this litigation relating to Core's patents are stayed until after the United States Patent and Trademark Office concludes its reexamination of Core's patents.

[7] The tracing equipment includes a stinger, pumps and stands, and overpack.

[8] The Spreadsheets include Copy of Copy of Field Paperworks2.xls and Copy of Field Paperwork.xls ("Field Paperwork Files"), which were designed to permit Core's field personnel to enter data and generate forms at Core's jobs sites, and PPWOKC File, which is designed to carry out numerous computations and functions used for month-end reporting.

that, as former employees of Core, both Faurot and Bryson signed employee confidentiality agreements that prohibited employees from disclosing Core's alleged trade secrets.

As to the other tracing equipment alleged to have been misappropriated by Faurot and STS, Faurot contends that the stands were designed by Bryson and Craig Mosely and initially produced by Tulsa Precision Machine and later by Winter-Fab. Further, as to the overpack, Faurot claims that Bryson was provided a sample overpack by Kenny Driver ("Driver"), which was given to STS's fabricator to replicate. Core disputes that STS was given the overpack by legitimate means and contends that, based on the deposition testimony of Driver, someone from STS led Driver to believe they were from Core and picked up an overpack, built by Driver for Core, and then returned it back to Driver. *See* Resp. Exhibit 2, Deposition of Kenneth Lee Driver, at 90 ln. 6-16.

As to the Spreadsheets, Core alleges are trade secrets and misappropriated by STS and Faurot, Core contends that its Spreadsheets were on a hard drive possessed by STS employee Brent Morrison. Kelly Bryson was in charge of creating forms used by STS's field operators. Core asserts its Spreadsheets were used to create the forms used by STS in the facilitation of its business. Faurot denies having personal knowledge of the Spreadsheets being used to create STS's forms; however, Core alleges that Faurot knew of the forms being used and was included on an email, in which one of Core's Spreadsheets was attached, to a software development company seeking to create similar software.

As to Core's customer and pricing lists, Core contends that its Field Paperwork Files included pricing information for Core's tracing services, which Faurot and STS had access to since Core's files were on STS's network and further that STS had access to a Core customer list from 2009. Faurot contends that Core's sales representatives had latitude in determining prices,

3

that RigData provided a source of a customers for tracer providers, and that Core had no evidence that Faurot or STS actually used a customer list contained in Core's Spreadsheets.

Faurot now seeks partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the basis that he has no personal liability, and seeks partial summary judgment as to Core's claims of misappropriation of trade secrets and violation of the Texas Theft Liability Act.

II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    Discussion

    A.     Personal Liability of Faurot

> As a general rule, a corporate agent may not be held personally liable in a suit against the corporation. However, if that

> agent knowingly participated in the tort, he becomes liable as a joint tort-feasor. It is not necessary that the corporate veil be pierced or even discussed. An officer or any other agent of a corporation may be personally as responsible as the corporation itself for tortious acts when participating in the wrongdoing.

*U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc*., 865 S.W.2d 214, 221 (Tex. App. 1993) (internal quotations and citations omitted). Faurot contends that Core can provide no evidence that he knowingly participated in the misappropriation of Core's trade secrets. Core asserts that there is ample evidence that would create a genuine issue of material fact as to whether Faurot was personally involved in misappropriating Core's trade secrets.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to Core and viewing all reasonable inferences in Core's favor, as the Court must when addressing a motion for summary judgment, the Court finds that Core has presented sufficient evidence to create a genuine issue of material fact as to whether Faurot was personally involved in misappropriating Core's alleged trade secrets. Specifically, the Court finds that Core has presented copies of the employment confidentiality agreements Faurot signed while working at Core which prohibited employees from disclosing information regarding Core's trade secrets and, upon termination, prohibited employees from taking any confidential information from the company. While the evidence does not exhibit that Faurot actually took any of the items Core alleges were trade secrets, the evidence does suggest that Faurot knew that these items (i.e. tracing equipment, Spreadsheets, and customer and pricing policies) were being used to help facilitate the formation of STS and to assist STS in conducting business and, further, had access to the items. Based on the evidence presented, the Court finds that a reasonable jury could find that Faurot was personally liable for misappropriating Core's alleged trade secrets. Therefore, Faurot is not entitled to summary judgment as to whether he was personally liable for misappropriating Core's alleged trade secrets.

B. Misappropriation of Trade Secrets/Texas Theft Liability Act

Faurot contends that Core's customer and pricing policies, as well as Core's tracing equipment, were not trade secrets. Faurot, thus, contends Core would not be able prevail on a claim of misappropriation of trade secrets or on a claim that Faurot is liable under the Texas Theft Liability Act. In order for Core to prevail on its claim that Faurot misappropriated a trade secret, Core will have to show: (1) existence of a trade secret; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) use of the trade secret; and (4) damages. *See Trilogy Software, Inc., v. Callidus Software Inc.*, 143 S.W.3d 452, 463 (Tex. App. 2004).

> To determine whether information constitutes a trade secret, a court considers the following six factors: (1) the extent to which the information is known outside the claimant's business; (2) the extent to which the information is known by employees and others involved in the claimant's business; (3) the extent of the measures taken by the claimant to guard the secrecy of the information; (4) the value of the information to the claimant and to its competitors; (5) the amount of effort or money expended by the claimant in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. The party claiming a trade secret need not satisfy all six factors because trade secrets do not fit neatly into each factor every time.

*Global Water Grp., Inc. v. Atchley*, 244 S.W.3d 924, 928 (Tex. App. 2008) (citing *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003)). "The existence of a trade secret is properly considered a question of fact to be decided by the judge or jury as fact-finder." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004).

Again, viewing the evidence in the light most favorable to Core and viewing all reasonable inferences in Core's favor, the Court finds that Core has presented sufficient evidence of a genuine issue of disputed fact as to whether Core's pricing policies and tracing equipment are trade secrets. Specifically, the Court finds that the employee confidentially agreements signed by Faurot, while employed at Core, present sufficient evidence that Core regarded its

6

pricing policies and tracing equipment as confidential and not information it intended to disclose to the industry at large. Further, while Faurot contends that Core's tracing equipment was displayed at trade shows and in the field, the Court agrees with Core's contention that the design of the equipment was not publically known. Based on the steps Core took in ensuring its employees did not disclose any confidential information pertaining to the facilitation of Core's business, the Court finds that a reasonable jury could find that Core's pricing policies and tracing equipment were trade secrets and, therefore, Faurot's motion for summary judgment should be denied as to the issue of whether Core's pricing policies and tracing equipment are trade secrets. Further, since the Court finds that Faurot's motion for summary judgment should be denied as to the issue of misappropriation of trade secrets, the Court finds that Faurot's motion for summary judgment as to whether Faurot is liable under the Texas Theft Liability Act should also be denied.

IV.     Conclusion

Accordingly, for the reasons set forth above, the Court DENIES Faurot's Motion for Partial Summary Judgment [docket no. 295].

**IT IS SO ORDERED this 29th day of October, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE